IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:21-CV-00092-RJC-DSC

| | |
|---|---|
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ELISE CLOUTIER-CHENIER and ALDEN JOHN WHITEHEAD, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND RECOMMENDATION**

**THIS MATTER** is before the Court on Defendant's "Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) and 12(b)(6)" (document # 8) filed on May 15, 2021. This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and the Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that the Motion be denied as discussed below.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff State Auto Mutual Insurance Company filed this action seeking a declaratory judgement that it has no obligation to defend Alden John Whitehead in the civil action filed by Elise Cloutier-Chenier, individually and as administrator of the Estate of Louis-Charles Chenier, in Union County Superior Court.

In the state lawsuit, Chenier filed six causes of action against Whitehead arising out of the death of their son. On or about April 7, 2019, she found her two-year-old son Louis-Charles Chenier dead in Whitehead's home. Whitehead has been charged with first degree murder and felony child abuse.

In her Amended Complaint, Chenier alleges that Whitehead, through act or omission, caused the death of their son. Specifically, she alleges that Whitehead struck Louis-Charles in the head causing his death (document #1, pg. 3). Chenier further claims that Whitehead failed to care for Louis-Charles after injuring him, and later, without warning, caused her to discover the child's body when she came to pick him up. Id.

After Whitehead was charged, Chenier's counsel submitted a claim to Plaintiff on behalf of Chenier and Louis-Charles' estate related to the child's death. The claim was made under a homeowners insurance policy Plaintiff issued to Whitehead that was effective at the time of the events in question. Plaintiff is presently defending the claim under a reservation of rights and has retained counsel for Whitehead in the state lawsuit. Counsel for Whitehead has filed an answer to Chenier's Amended Complaint.

Chenier has moved to dismiss this action on several grounds and the Motion is ripe for disposition.

## II. DISCUSSION

The question is whether there is subject matter jurisdiction over this action and if so, whether the Court should exercise the permissive jurisdiction afforded by the Declaratory Judgement Act of 1934.

Subject matter jurisdiction is a threshold issue for the Court. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96 (1998); Jones v. American Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999); Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). The requirements are so absolute that "[n]o party need assert [a lack of subject matter jurisdiction]. No party can waive the defect, or consent to jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own." Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 389 (1998) (internal citations omitted). See also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1945 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt") (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006); United States v. Cotton, 535 U.S. 625, 630 (2002)); Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982).

The party asserting federal jurisdiction has the burden of proving that subject matter jurisdiction exists. See, e.g., Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); Norfolk Southern Ry. Co. v. Energy Dev. Corp., 312 F. Supp. 2d 833, 835 (S.D.W.Va. 2004).

A case falls within a district court's diversity jurisdiction only if diversity of citizenship among the parties is complete and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a); Carden v. Arkoma Associates, 494 U.S. 185, 187 (1990); Strawbridge v. Curtiss, 3 Cranch 267 (1806). It is undisputed here that the parties are diverse and the requisite amount in controversy is met.

Chenier argues that application of the principles of standing and ripeness preclude the Court from hearing this case. The Fourth Circuit recently summarized these justiciability doctrines:

> The "irreducible constitutional minimum of standing" requires the petitioner to allege a concrete injury that is "actual or imminent, not conjectural or hypothetical." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted). Ripeness, another justiciability doctrine, determines when a case or controversy is fit for federal judicial review. "[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs. v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

Trustgard Insurance Co. v. Collins, 942 F.3d 195, 199 (4th Cir. 2019).

Chenier alleges Plaintiff lacks standing to bring this action because discovery in the state lawsuit is ongoing, there are disputed issues of fact, liability has yet to be determined, and the Amended Complaint includes alternative theories of recovery.

The Court acknowledges that the state lawsuit is in its early stages and Whitehead has not admitted liability. But these issues do not present the same obstacles to determining Plaintiff's duty to defend the policyholder as they would in determining Plaintiff's duty to indemnify the policyholder. Indemnity is not at issue here. To avoid issuance of an advisory opinion, "decisions about indemnity should be postponed until the underlying liability has been established." Id. at 200 (quoting Lear Corp. v. Johnson Elec. Holdings Ltd., 353 F.3d 580, 583 (7th Cir. 2003)). The Fourth Circuit distinguished the duty to indemnify from duty to defend by noting that: "In doing so, we distinguished duty-to-defend cases that addressed who was required to pay the costs of defending a suit prior to judgement… Thus, suits about the duty to indemnify – unlike the duty-to-defend suits – would ordinarily be advisory when the insured's liability remains undetermined." Id.

The state lawsuit has been filed, resulting in Plaintiff having to retain counsel to defend Whitehead. The fact that Chenier includes alternative theories of recovery in her Amended Complaint does not prevent this action to resolve Plaintiff's duty to defend from being ripe for adjudication. Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss for lack of subject matter jurisdiction be denied.

Plaintiff seeks relief based upon the Declaratory Judgment Act, 28 U.S.C. § 2201. The Court must consider whether it is appropriate to exercise the permissive jurisdiction afforded by the Declaratory Judgement Act of 1934.

Under the Declaratory Judgment Act, in "a case of actual controversy within its jurisdiction," a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). In deciding whether to exercise its discretion under the Declaratory Judgment Act, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995).

The Fourth Circuit has identified four factors, commonly referred to as the Nautilus factors, that courts should consider in determining whether practicality and wise judicial administration warrant abstention in a given case:

> (1) the state's interest in having its own courts decide the issue; (2) the state court's ability to resolve the issues more efficiently than the federal courts; (3) the potential for unnecessary entanglement between the state and federal courts based on overlapping issues of fact or law; and (4) whether the federal action is mere forum-shopping.

Trustgard, 942 F.3d at 202 (citing Penn-Am Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004)). As the court noted, it must be cautious in exercising jurisdiction where a declaration would have potentially preclusive consequences in the underlying state suit:

> In deciding whether to exercise the discretion to issue a declaratory judgment, we must look closely at any potentially preclusive consequences that our decision might have on the state-court proceeding, or vice versa. Preclusion following an imprudent federal decision might "frustrate the orderly progress of the state-court proceedings by leaving the state court with some parts of the case foreclosed from further examination but still other parts in need of full scale resolution." Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994), abrogated in part on other grounds by Wilton, 515 U.S. 277). (internal quotation marks omitted).

Id.

Consideration of a declaration's potentially preclusive consequences in the underlying state lawsuit are appropriately addressed within the context of the third Nautilus factor. As previously discussed, the Court recognizes a difference between the duty to defend and the duty to indemnify. Id. at 200. Here, the Court's determination as to Plaintiff's duty to defend would not result in entanglement with the state court action due to overlapping issues of fact and law. In the state lawsuit, the factual issues are whether Whitehead intentionally or negligently killed Louis-Charles, and whether he intentionally or negligently inflicted emotional distress on Chenier. Determining the duty to defend question does not require the court to resolve those issues. See Minnesota Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP, 355 F. App'x. 698, 701–702 (4th Cir. 2009). In a similar case applying Virginia law, the Fourth Circuit held:

> This Court in Coffey found that "[u]nder Virginia law, an insurer's duty to defend arises 'whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy.'" Coffey, 368 F.3d at 413 (quoting Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 397 S.E.2d 100, 102 (1990)). This principle is referred to as the "four

> corners rule." See Travelers Property Cas. Ins. Co. v. Bruner, No. 3:07CV463–HEH, 2007 WL 3143333, at *2 (E.D.Va. Oct. 25, 2007). Based on the four corners rule, this Court found that "the duty-to-defend question ... [does] not require the district court to resolve factual questions at all. It need only decide such coverage by comparing what [the plaintiff] *has alleged* in the state court action with the language of the [provider's] insurance policy." Coffey, 368 F.3d at 413. Therefore, "there is no duty to defend 'if it appears clearly that the insurer would not be liable under its contract for any judgment *based upon the allegations.*' Brenner, 397 S.E.2d at 102 (emphasis added)." Id. The district court was being asked only to "decide the scope of the *contractual* language" of the insurance policy, and it was "not necessary to resolve" factual issues "before defining the scope of the contract's" exclusion clause at issue. Id. at 414.

Id. As in Coffey, this Court must only determine the scope of the coverage. The Court's decision to exercise jurisdiction in this case under the Declaratory Judgement Action would not result in entanglement with the state court action due to overlapping issues of fact and law.

Application of the other Nautilus factors likewise supports the Court's exercise of jurisdiction.

Regarding the first Nautilus Factor, the state of North Carolina certainly has a strong interest in its jurisprudence and deciding cases calling for application of its own laws. Abstention would not advance that interest because (1) the duty to defend is not before the court in the state lawsuit, and (2) Plaintiff is not a party to that lawsuit. The Fourth Circuit has previously found those circumstances persuasive in reaching the same conclusion as the Court here. See Coffey, 368 F.3d at 414 (holding that the state's interests will not be significantly advanced where the contractual coverage issue will not be decided by the state tort case, and plaintiff was not a party to the state case).

As to the second Nautilus factor, similar considerations suggest the duty to defend question would not be more efficiently resolved in the state lawsuit. While this diversity action is governed by North Carolina law and the state has a strong interest in the application of its laws,

this does not weigh in favor of the state resolving the issues more efficiently, especially where, as here, the issue of the duty to defend does not rise to the level of "difficult, complex, or unsettled." Goodville Mut. Cas. Co. v. Doby, 2:19-CV-607, 2020 WL 2602203, at *3 (E.D. Va. 2020) (citing Coffey, 368 F.3d at 414).

Finally, as to the fourth Nautilus factor, there is no evidence that Plaintiff is forum shopping. Under Nautilus, a federal action of this kind may be filed "in an entirely proper effort to obtain prompt resolution of a dispute over [an insurer's] obligation...." Nautilus, 15 F.3d at 380. Courts have recognized that parties in Plaintiff's position have a strong interest in a speedy resolution of the duty to defend issue. See, Goodville, 2020 WL 2602203, at *4. This weighs in favor of the exercise of jurisdiction here.

Chenier relies on Continental Cas. Co. v. Fuscardo, 35 F.3d 963, 968 (4th Cir. 1994) in support of her argument that this factor weighs against exercising jurisdiction. But this case is distinguishable since it involves the duty to defend rather than the duty to indemnify, and the duty to defend is not certain to arise in the underlying state court proceedings.

For those reasons, the undersigned finds that these factors weigh in favor of this Court exercising jurisdiction over Plaintiff's declaratory judgement action. Accordingly, the undersigned respectfully recommends that Defendant's "Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) and 12(b)(6)" be denied.

### III.   RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendant's "Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) and 12(b)(6)" (document # 8) be **DENIED**.

## IV.     NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Robert J. Conrad, Jr..

Signed: June 16, 2021     **SO ORDERED**.

_____
David S. Cayer
United States Magistrate Judge